UNITED STATES BANKRUPTCY COURT DISTRICT OF
NEW MEXICO

In re: Jonathan P. Gimbel,                         Case No. 11-12802-j7

      Debtor.

JONATHAN P. GIMBEL,

      Plaintiff,

v.                                                       Adv. No. 17-01048-j

U.S. DEPARTMENT OF EDUCATION,
SALLIE MAE,
NAVIENT SOLUTIONS, INC., AND
EDUCATIONAL CREDIT MANAGEMENT CORPORATION,

      Defendants.

## MEMORANDUM OPINION

THIS MATTER came before the Court on Educational Credit Management Corporation's ("ECMC") motion to dismiss under Fed. R. Bankr. P. 7012(b)(6) ("Motion to Dismiss"). *See* Docket No. 18. Jonathan P. Gimbel, the Debtor who is also the plaintiff in this adversary proceeding, was granted a discharge in his chapter 7 bankruptcy case on November 1, 2011. *See* Docket No. 11, 11-12802. About six and a half years later, on May 16, 2017, the Court granted the Debtor's motion to reopen his bankruptcy case. *See* Docket No. 16, 11-12802. About a month later, he filed this adversary proceeding seeking to discharge his student loan debt on the ground that repaying the debt would be an undue hardship under 11 U.S.C. §523(a)(8). *See* Docket No. 19, 11-12802; and *see* Docket No. 1, 17-01048. ECMC was permitted to intervene as the defendant after being assigned all right, title and interest in and to Mr. Gimbel's consolidated student loan. *See* Docket Nos. 12 & 15. ECMC subsequently filed the Motion to Dismiss. *See* Docket No. 18

Having considered the motion, response, and reply, reviewed the law, and otherwise being informed, for the reasons stated below, the Court will deny the Motion to Dismiss.

FACTS

For the purposes of this opinion, the Court assumes without deciding that the following facts alleged in the complaint are true. Jonathan Gimbel is 63 years old and lives in Santa Fe, New Mexico. In 2011, he filed a chapter 7 bankruptcy case in which he listed on Schedule F student loan debt to the United States Department of Education ("USDOE") and to Sallie Mae in the amounts of $52,237.00 and $24,750.00, respectively, totaling $76,987.00. Mr. Gimbel now owes $69,025.78 and $51,471.78 to USDOE and Sallie Mae, respectively, totaling $110,497.20. He was granted a discharge on November 1, 2011. Before his bankruptcy case was closed, Mr. Gimbel did not seek a determination that his student loan debt posed an undue hardship to him and was therefore dischargeable.

Since 2009, Mr. Gimbel's yearly income has ranged from $2,219.00 to $9,152.00 based on his work as a fitness teacher or his acupuncture business. In the statement of financial affairs Mr. Gimbel filed in his Chapter 7 case, he reported his income for 2009 and 2010 as $2,219 and $3,860, respectively, and reported monthly income in 2011 of $100 on Schedule I. As reported on an IRS Form 1099, he earned $1,433.13 in 2011. As reported on IRS 1040 forms, in 2012, 2013, 2014, 2015 and 2016, he had total income of $7,639, $525, $4,382, $9,154 and $8,125, respectively.

Mr. Gimbel does not own a home or other real estate. He rents a room for $450.00 per month. Mr. Gimbel drives a 2010 Honda CR-V and makes car payments of $326.00 per month. He has borrowed money over the years to pay personal and business expenses. Mr. Gimbel has sought to defer payments on his student loans since they entered repayment.

Mr. Gimbel does not have realistic prospects of obtaining a job that would provide

2

sufficient income to pay his student loans nor other resources to pay the student loans. He has minimized his expenses to the extent feasible. If forced to repay his student loans, Mr. Gimbel would be unable to provide himself with adequate shelter, nutrition and health care.

## DISCUSSION

A. Standard for deciding a motion to dismiss

In considering a motion to dismiss the Court examines if the Plaintiff has alleged facts sufficient to "to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). The facts must "nudge [the] claims across the line from conceivable to plausible" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007). A claim is plausible when it has a "reasonable prospect of success, but also [informs] the defendants of the actual grounds of the claim against them." *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1276 (10th Cir. 2009). As the Tenth Circuit explained,

> plausibility in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)(internal quotations omitted). For the purposes of ruling on a motion to dismiss, the Court "must accept as true all of the allegations contained in a complaint" *Iqbal*, 556 U.S. at 678. This tenet does not extend to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" or "a legal conclusion couched as a factual allegation." *Id.*

B. Undue hardship standard

Under the Bankruptcy Code,[1] student loan debt is excepted from discharge under

---

[1] All references to the "Bankruptcy Code" or the "Code" refer to Title 11 of the United States Code. All references to "Bankruptcy Rules" or the "Rules" refer to the Federal Rules of Bankruptcy Procedure.

3

§523(a)(8) unless the debtor proves "excepting [the] debt from discharge . . . will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. §523(a)(8).

Undue hardship is not defined in the Code. The Tenth Circuit uses the *Brunner* test to determine whether repayment of the debt will impose an undue hardship. *Educational Credit Management Corporation v. Polleys*, 356 F.3d 1302, 1307 (10th Cir. 2004). The *Brunner* test requires the Court to find:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Id.* (quoting, *In re Brunner*, 46 B.R. 752, 756 (S.D.N.Y. 1985), *aff'd sub nom. Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir. 1987)). The debtor must prove each prong of the test by a preponderance of the evidence. *Id*

The Tenth Circuit has cautioned courts applying the *Brunner* test that "the terms of the test must be applied such that debtors who truly cannot afford to repay their loans may have their loans discharged" in order "to better advance the Bankruptcy Code's fresh start policy, and to provide judges with the discretion to weigh all the relevant considerations." *Polleys*, 356 F.3d at 1309 (internal quotations omitted).

In the Motion to Dismiss, ECMC argues: (1) Mr. Gimbel seeks to discharge post-petition loans to which §523(a)(8) does not apply; (2) the Court should apply a time limit by which a debtor must bring an action under §523(a)(8) seeking to discharge a student loan; (3) when applying *Brunner* test the Court's analysis is limited to circumstances that existed when Mr. Gimbel received his discharge and subsequent circumstances that are reasonably related to those at the time of discharge; and (4) Mr. Gimbel's six-year delay in filing the adversary proceeding was unreasonable and highly prejudicial as a matter of law due to stale evidence.

4

Mr. Gimbel asserts that his complaint is not based on post-discharge changed circumstances, his financial circumstances have not changed, and the evidence is not stale. *See* Docket No. 19.

For reasons discussed below, the Court denies ECMC's Motion to Dismiss.

C. <u>Discharging post-petition loans</u>

ECMC argues Mr. Gimbel seeks to discharge student loans that were dispersed post-petition and are therefore not pre-petition claims to which §523(a)(8) even potentially applies. Mr. Gimbel owed a total of $76,987.00 on student loans when he commenced his bankruptcy case and now owes a total of $110,497.20.[2] ECMC alleges the difference of $33,510.20 indicates Mr. Gimbel seeks to discharge post-petition student loans.

The Court agrees with ECMC that any loan dispersed after Mr. Gimbel filed his bankruptcy petition cannot be discharged in this bankruptcy case. However, Mr. Gimbel has not alleged any post-petition loan disbursements or that any loans he seeks to discharge were made post-petition. The Court does not infer from the Complaint that $33,510.20 is the amount owed on a post-petition loan. The Court will not dismiss Mr. Gimbel's adversary proceeding based on the post-petition disbursement ground.

D. <u>Hardship existing at the time of discharge</u>

ECMC argues that to except a student loan debt from discharge Mr. Gimbel must allege a hardship existing when he received his chapter 7 discharge. In his response, Mr. Gimbel agrees but argues the complaint alleges such a hardship.[3] The Court has determined that the complaint alleges such a hardship sufficient to withstand a motion to dismiss.

---

[2] The "facts" recited in this opinion are Plaintiff's alleged facts the Court takes as true for purposes of ruling on the Motion to Dismiss.
[3] The Court has not examined whether the debtor must suffer an undue hardship at the time of the chapter 7 discharge because that issue is not in dispute.

E. Relationship of the debtor's circumstances at the time of discharge to the debtor's later circumstances

ECMC also argues that Mr. Gimbel fails to state a claim because he has not alleged that the hardship he has suffered and expects to suffer after receiving a chapter 7 discharge is reasonably related to the nature of the hardship he suffered at the time of discharge. The Court disagrees.

The first two requirements of the *Brunner* test are: (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; [and] (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans. The second requirement is designed to prevent discharge of student loan debt if the debtor's future circumstances may enable the debtor to repay the debt while maintaining a minimal standard of living.

It is irrelevant to the second prong of the *Brunner* test whether the reasons for the hardship that prevent a debtor from repaying student loans while maintaining a minimal standard of living remain the same or are similar to the reasons for the initial hardship.[4] For example, consistent with the purpose of the *Brunner* test, if a debtor was in dire financial straits when granted a chapter 7 discharge because her business failed, then she gets a job which she loses almost immediately as a result of a newly contracted incurable disease, the debtor's persisting undue hardship could prevent the debtor from repaying the student loans while maintaining a minimal standard of living even though the reasons for the hardship changed.

---

[4] *Cf. In re Crawley*, 460 B.R. 421, 434-435 (Bankr. E.D. Pa. 2011)) (when applying the *Brunner* test the best practice is for a court to consider all evidence before it regarding debtor's financial situation, including any post-discharge changed circumstances). *But cf. In re Bugos*, 288 B.R. 435, 436 (Bankr. E.D. Va. 2003) (holding when at the time of discharge the debtor was financially secure but after he discharge was in a car accident, "it is not appropriate for the court to reopen the case to grant relief on undue hardship for circumstances that arose after the filing of the petition and that were not foreseeable at that time.").

6

Mr. Gimbel has alleged that since the time he was granted a discharge he has minimized his expenses to the extent feasible, and has not had and does not have a realistic prospect of obtaining a job that would provide sufficient income to repay his student loans while providing himself with adequate shelter, nutrition, and health care. His allegations include the amount of his income per year over an eight-year period and allegations regarding his expenses. The Court has determined that these allegations are sufficient to state a claim.

F. Mr. Gimbel's six-year delay in seeking a student loan discharge does not bar his claim as a matter of law

ECMC also argues that Mr. Gimbel's six-year delay in filing the complaint to seek an undue hardship discharge is unreasonable as a matter of law and will prejudice their case due to stale evidence. This is essentially a laches defense. To prove laches ECMC "must demonstrate that there has been an unreasonable delay in asserting the claim *and* that the defendant was materially prejudiced by the delay." *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1208 (10th Cir. 2001)(quoting *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997)(emphasis in original). Unlike a statute of limitations defense, which "may be resolved on a Rule 12(b)(6) motion to dismiss when the dates given in the complaint make clear that the right sued upon has been extinguished," laches requires factual findings of unreasonable delay and material prejudice that may not patently apparent from the complaint. *Lymon v. Aramark Corp.*, 728 F. Supp. 2d 1207, 1215 (D.N.M. 2010), *aff'd,* 499 F.App'x 771 (10th Cir. 2012); *see In re Watkins*, 461 B.R. 57, 61 (W.D. Mo. 2011)(laches "is an affirmative defense that must be pled and proved by ECMC . . . is not a basis for dismissal at this time.").

Further, the Court does not agree with ECMC that that six years, as a matter law, is always too long to wait to commence an adversary proceeding to discharge student loan debt. Unlike other sections of §523, there is no deadline expressly imposed by the Code or Rules for

7

filing an adversary proceeding to determine whether a student loan debt should be excepted form the discharge under §523(a)(8). Rule 4007(b) governs the time for filing dischargeability actions; it states, "A complaint other than under § 523(c) may be filed at any time." Fed. R. Bankr. P. 4007(b). A claim under §523(a)(8) is not a complaint under § 523(c).[5] *See also In re Zygarewicz*, 423 B.R. 909, 912–13 (Bankr. E.D. Cal. 2010)("there is nothing in the Bankruptcy Code requiring that a complaint under section 523(a)(8) be filed at any particular point in a bankruptcy case, whether it is filed under chapter 7 or 13. Fed. R. Bankr.P. 4007(b) permits such dischargeability complaints to be brought at any time, including after the entry of a discharge and the closing of the bankruptcy case."). *But see In re Root*, 318 B.R. 851, 853 (Bankr. W.D. Mo. 2004)("The passage of 13 years since the entry of that order attenuates the relationship between the discharge and the circumstances affecting the determination of undue hardship so much as to make it unreasonable to entertain the complaint now."). [6]

In sum, the six year delay between Mr. Gimbel's chapter 7 discharge and the commencement of this adversary proceeding does not require dismissal of the complaint.

## CONCLUSION

For the reasons stated above, the Court will deny ECMC's Motion to Dismiss. The Court will enter a separate order consistent with this opinion.

---

[5] §523(c) sets out the procedure for excepting debt from discharge under §523(a)(2), §523(a)(4), and §523(a)(6). Debts under these sections are not automatically excepted from discharge unlike student loans under §523(a)(8).
[6] The Code and Rules do not contain an express time limit on commencing an adversary proceeding seeking to except a student loan debt from the discharge. However, reading various sections of the Bankruptcy Code together, it may be that a debtor may not seek a student loan hardship discharge after the debtor is eligible to file a new chapter 7 case in which the debtor may be granted a discharge. *See* §727(a)(8) (imposing an 8-year time limit between chapter 7 discharges); § 523(b) (permitting a debtor to seek a student loan debt hardship discharge in a subsequent chapter 7 case even if the debt was excepted from the discharge in the prior case); *In re Root*, 318 B.R. 851, 854 (Bankr. W.D. Mo. 2004)("Given the passage of time, the Debtor in this case would not be denied a discharge by reason of the discharge order in this case more than 13 years ago. The Debtor is therefore not without remedy. She may file a new bankruptcy case and commence an adversary proceeding to obtain an undue hardship determination based upon her present circumstances."). Here, Mr. Gimbel commenced this adversary proceeding before he was eligible for a chapter 7 discharge in another chapter 7 case.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: March 8, 2018.

COPY TO:

All counsel of record via CM/ECF